## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

POWERTEL/ATLANTA, INC.,        :
                               :
    Plaintiff,            :
                               :
    v.                    :  CIVIL ACTION NO.
                               :  1:05-CV-3068-RWS
CITY OF CLARKSTON, GEORGIA,    :
LEE SWANEY, PAT DAVIS-         :
MORRIS, WAYNE FOSTER,          :
ROSEMARIE NELSON, HIEN DAI     :
NGUYEN, JOYCE WADE,            :
EMANUEL RANSOM, in their       :
respective official capacities as :
MAYOR OF CLARKSTON and as      :
members of the CLARKSTON CITY  :
COUNCIL,                       :
                               :
    Defendants.           :

### ORDER

Now before the Court is Plaintiff's Motion for Partial Summary

Judgment [22].  After considering the entire record, the Court enters the

following Order.

### Background

Plaintiff Powertel/Atlanta, Inc. ("Powertel") is a wireless

telecommunications provider authorized by the Federal Communications

Commission to operate a personal wireless communications system in the greater metropolitan area of Atlanta, Georgia, including the City of Clarkston. To provide those wireless services, Powertel requires a network or "grid" of telecommunications towers and other structures to hold its telecommunications antennas.[1] Powertel, which is currently in the process of expanding its network, wished to locate a telecommunications antenna in Clarkston to increase its

---

[1] As the First Circuit has explained:

> In order "to provide consumers with mobile telephone service over a broad geographic area," that area is divided into cells, each transmitting and receiving signals on a specified frequency. Federal Communications Commission, Wireless Telecommunications Bureau, Fact Sheet # 2, National Wireless Facilities Siting Policies at 27 . . .
>
> Coverage within a cell is maintained by arranging antennae in a honeycomb grid. [cit.] Because the technology is low powered and operates only within line-of-sight of a tower, multiple towers are often required to ensure that any particular geographic area has sufficient coverage. When a coverage gap occurs, customers cannot receive and send signals, and when customers pass through a coverage gap their calls are disconnected. Furthermore, personal wireless service providers have an incentive to increase the number of cells and correspondingly decrease the geographic coverage of each cell because the "smaller and more numerous a provider's cells are, the more often it can reuse frequencies and the more users it can accommodate."

Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F.3d 51, 56-57 (1st Cir. 2001) (internal quotations and alterations omitted).

2

coverage area.  After investigating various sites for its new Clarkston antenna, Powertel's engineers determined that an antenna was needed at or near a parcel of property located at 905 North Indian Creek Drive in the City of Clarkston (the "Property").  Powertel's engineers determined that co-location of the antenna on an existing telecommunications tower was not feasible, and that no existing structures suitable for locating its antenna were available in that area. Recognizing therefore that it would have to construct a telecommunications tower to hold its antenna,[2] Powertel entered into a lease agreement with the Property's owner, Clorise Johnson, who at all relevant times owned and operated a beauty salon out of a building located on the Property.  Under the terms of that lease, Powertel would construct and operate a wireless telecommunications tower on a portion of the Property in return for rent payments in the amount of $1,000 per month.

The Property was zoned C-1 and designated as "Neighborhood Business District" under § 400 of the City of Clarkston Zoning Ordinance ("Zoning Ordinances").  Under the Zoning Ordinances, telecommunications towers are a

---

[2]    "Ordinarily, . . . [telecommunications service providers] site[ ] [their] transmitters on existing structures.  In such locations, the transmitters are almost invisible. Where no suitable pre-existing structures are available, a tower is built."  Omnipoint Corp. v. Zoning Hearing Board of Pine Grove Township, 181 F.3d 403, 406 n.2 (3d Cir. 1999).

permitted use on properties so zoned.[3]  Powertel prepared and submitted an

application for a building permit on Ms. Johnson's behalf to construct a 150

foot monopole structure on the leased portion of the Property (the

"Application"),[4]  and on July 20, 2005, the Application was presented to the

City's Planning and Zoning Review Board for review.  Following a hearing, the

Planning and Zoning Board voted to recommend that Powertel's Application be

denied based upon its inconsistency with § 504 of the Zoning Ordinances,

which provides:

> Only one principal building or structure or use and its
> customary accessory buildings and uses shall be
> permitted on any lot.

Powertel then sought approval of its Application from the Clarkston City

Council.  After twice requesting that consideration of its Application be

deferred, and after agreeing to certain modifications to its proposed structure, a

---

[3] The Clarkston Zoning Ordinances provide:

> Telecommunications and microwave towers exceeding
> fifteen (15) feet in height and their attendant structures and
> outbuildings shall be a permitted use only within C-1, C-2,
> C-3, and M-1 zoning districts.

Zoning Ordinances § 612.

[4] "A monopole is a telecommunications tower used to transmit wireless telephone signals." Omnipoint, 181 F.3d at 406 n.2.

4

hearing was held on Powertel's Application.  After discussing the fact that

Powertel's Application did not comply with the limitations imposed by § 504,

as well as Powertel's failure to provide the Planning and Zoning Board

information relating to potential alternative sites for its proposed tower, the City

Council voted to uphold the Board's recommendation and deny Powertel's

Application.[5]  By letter dated November 3, 2005, the City sent a letter to Ms.

Johnson, the Property owner on whose behalf Powertel prosecuted the

Application, informing her that the Application had been denied.  In pertinent

part, that letter states:

> Following a Public Hearing on November 1, 2005, the
> Vice-Mayor and Council voted to accept the
> recommendation of Planning and Zoning and deny
> your request for a building permit for 905 N. Indian
> Creek Drive to construct a cell tower.

Within 30 days of the date of that letter, Powertel initiated this action

alleging inter alia that the Clarkston's denial of its Application violates the

Telecommunications Act of 1996 and requesting either mandamus or injunctive

relief requiring the City to approve its Application and issue a building permit

---

[5] Powertel states that after agreeing to certain changes in its project, the Board
eventually voted to approve its Application.  That recommendation, however, is not
reflected in the record.  Additionally, and as is discussed below, the record indicates that
the Board in fact recommended that the Application be denied.

for its proposed telecommunications tower.  Discovery in this matter has now

closed, and Powertel moves for partial summary judgment on its

Telecommunications Act claims.  The Court turns now to resolve Powertel's

Motion.

## Discussion

## I.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment

shall be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears

'the initial responsibility of informing the . . . court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.' "

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden then shifts to the non-movant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The applicable substantive law

identifies which facts are material. Id. at 248. A fact is not material if a dispute

over that fact will not affect the outcome of the suit under the governing law.

Id. An issue is genuine when the evidence is such that a reasonable jury could

return a verdict for the non-moving party. Id. at 249-50.

In determining a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002). But, the court is bound only to draw those inferences which are

reasonable. "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial." Allen

v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted." Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

586 (once the moving party has met its burden under Rule 56(c), the

7

nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts.").

## II.    Analysis

In its Motion for Summary Judgment, Powertel asserts that the City's decision to deny its Application for a building permit violates the Telecommunications Act of 1996 ("TCA"), codified at 47 U.S.C. § 151 <u>et seq.</u>, for two reasons.  First, Powertel argues that the City's decision to deny its Application violates the TCA because the § 504 of the Zoning Ordinances, as applied, effectively prohibits the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II).  (<u>See</u> Br. in Supp. of Mot. for Summ.  J. 13-17.)  Second, Powertel argues that the City's decision was not supported by substantial evidence contained in a written record as required by § 332(c)(7)(B)(iii).  The Court takes up each of Powertel's arguments in turn.

### A.    The Telecommunications Act of 1996

The TCA "is an omnibus overhaul of the federal regulation of communications companies," <u>Cellular Telephone Co. v. Town of Oyster Bay</u>, 166 F.3d 490, 493 (2d Cir. 1999), intended, in part, "to promote competition and higher quality in American telecommunications services and 'to encourage the rapid deployment of new telecommunications technologies.' " <u>Michael</u>

8

Linet, Inc. v. Village of Wellington, 408 F.3d 757, 761 (11th Cir. 2005)

(quoting City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115, 125 S. Ct.

1453, 161 L. Ed. 2d 316 (2005)).  "With respect to the construction of

telecommunications facilities, Congress recognized zoning decisions by state

and local governments had created an inconsistent array of requirements, which

inhibited both the deployment of personal communications services and the

rebuilding of a digital technology-based cellular telecommunications network."

Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1214 (11th Cir. 2002).

Congress also recognized, however, that " 'there are legitimate State and local

concerns involved in regulating the siting of [communications facilities].' " Id.

(quoting H.R. Rep. No. 104-204 (1996), at 207-08, reprinted in 1996

U.S.C.C.A.N. 124, 222)).  Congress sought to balance these concerns by

expressly preserving in the TCA the traditional authority enjoyed by state and

local governments to regulate land use and zoning, while imposing certain

"substantive and procedural limitations upon the authority of state or local

governments to regulate the construction of facilities for wireless

communication services."  Preferred Sites, 296 F.3d at 1214-15; Omnipoint

Commc'ns, Inc. v. City of White Plains, 430 F.3d 529, 531 (2d Cir. 2005)

("The TCA thus strikes a balance between "two competing aims-to facilitate

nationally the growth of wireless telephone service and to maintain substantial

local control over siting of towers." (quoting <u>Town of Amherst, N.H. v.</u>

<u>Omnipoint Commc'ns</u>, 173 F.3d 9, 13 (1st Cir. 1999)); <u>see also</u> <u>Southwestern</u>

<u>Bell Mobile Systems, Inc. v. Todd</u>, 244 F.3d 51, 57 (1st Cir. 2001) (explaining

that the procedural and substantive limitations of the TCA "subject local

governments to an outer limit upon their ability to regulate personal wireless

services land use issues." (internal quotations and alterations omitted)).  Thus,

under the TCA, local governments may not

> "unreasonably discriminate among providers of
> functionally equivalent services," § 332(c)(7)(B)(i)(I),
> take actions that "prohibit or have the effect of
> prohibiting the provision of personal wireless
> services," § 332(c)(7)(B)(i)(II), or limit the placement
> of wireless facilities "on the basis of the
> environmental effects of radio frequency emissions,"
> § 332(c)(7)(B)(iv). They must act on requests for
> authorization to locate wireless facilities "within a
> reasonable period of time," § 332(c)(7)(B)(ii), and
> each decision denying such a request must "be in
> writing and supported by substantial evidence
> contained in a written record," § 332(c)(7)(B)(iii).

<u>City of Rancho Palos Verdes</u>, 544 U.S. at 116.

### B.    Prohibition of Wireless Services

Section 332 of the TCA provides: "The regulation of the placement,

construction, and modification of personal wireless service facilities by any

State or local government or instrumentality thereof . . . shall not prohibit or

have the effect of prohibiting the provision of personal wireless services." 47

U.S.C. § 332(c)(7)(B)(i)(II). In its Motion for Summary Judgment, Powertel

claims that the City's denial of its Application violates this provision. In this

respect, Powertel argues that because the City denied its Application pursuant to

§ 504 of the Zoning Ordinances, which limits each lot to one "principal

building or structure or use," and because the City admits that every lot upon

which a telecommunications tower is a permitted use already has a "principal

building or structure or use," there are no currently available lots upon which

Powertel could build its telecommunications tower. Thus, according to

Powertel, § 504 as applied "precludes the construction of telecommunication

towers within the city," thereby effectively prohibiting the provision of wireless

services in violation of the TCA.[6]  (Br. in Supp. of Mot. for Summ. J. [22-2] at

---

[6] Powertel's argument in this respect hinges upon its assertion that merely because all appropriately zoned properties currently have a principal building or structure or use upon them, then it is necessarily impossible for Powertel to construct an antenna within the City. This is so, Powertel argues, because "[t]ypically, telecommunications towers are additional sources of income for a property owner, not the sole source of income, . . . for parcels on commercially zoned property."  (Reply Br. [25] at 6 n.6.)  Thus, according to Powertel, "[a]s a practical matter, no property owner is likely to remove an existing commercial use from a parcel in order to accommodate a wireless telecommunications tower."  (Id.)

The Court questions the logic of Powertel's argument.  Section 504 does not prohibit the construction of communications towers generally, and of course, Powertel remains free to purchase a piece of property and erect its telecommunications tower as

14 (emphasis omitted).)  In the Court's view, this falls short of establishing a violation of the TCA's anti-prohibition clause.

"Whether a particular zoning decision violates the TCA's anti-prohibition clause is a question 'that a federal district court determines in the first instance without any deference to the [local zoning] board.' "  VoiceStream Minneapolis, Inc. v. St. Croix County, 342 F.3d 818, 833 (7th Cir. 2003) (quoting National Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22 (1st Cir. 2002)).  "In resolving this issue, the district court may require evidence to be presented in court that is outside of the administrative record compiled by the local authority." Id. (internal quotations omitted); see also APT Pittsburgh Ltd. P'ship v. Penn Township Butler County, 196 F.3d 469, 475 (3d Cir. 1999) (explaining that anti-prohibition determination is to be made de novo by a reviewing court and is not necessarily limited to the administrative record).

---

the primary structure or use.  Powertel has elected not to pursue this course, opting instead to construct its tower on a leased portion of a lot with a building or use already located upon it.  Thus, it appears that § 504, as applied in this case, merely prohibits Powertel from constructing its towers on property leased on favorable terms (in this case, a rent of $1,000 per month).  On these facts, it is far from clear that § 504 would constitute an effective prohibition on the provision of wireless services.  Nevertheless, because, as is discussed in detail below, the Court concludes that Powertel has not established a significant gap in its service coverage, the Court need not resolve this issue at this stage of the litigation.

The Eleventh Circuit has not considered what is required to establish a violation of TCA's anti-prohibition clause. Other courts have considered the question, however, and their opinions offer guidance. Certainly, a blanket prohibition on the construction of wireless communication facilities would violate this provision. E.g., MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 730 (9th Cir. 2005); 360 Degrees Commc'ns Co. of Charlottesville v. Board of Sup'rs of Albemarle County, 211 F.3d 79, 86 (4th Cir. 2000). But, Powertel does not argue that the City has effected a general ban on the construction of wireless telecommunications facilities. Nor could it. Telecommunications towers are expressly authorized under the City's Zoning Ordinances and it is undisputed that other telecommunications towers have been constructed within the City of Clarkston. Thus, the question is not whether the City has expressly banned telecommunications towers; rather it is whether Powertel has proven that the City, through its enforcement of § 504, has de facto banned such towers and thus effectively prohibited the provision of wireless services. The Court concludes that Powertel has not.

Other circuits which have considered the TCA's anti-prohibition clause have held that, even in the absence of a general ban on wireless services, state or local governments may effectively prohibit the provision of wireless services

13

in violation of the TCA by preventing a wireless provider from closing a

"significant gap" in service coverage.  See, e.g., MetroPCS, 400 F.3d at 732-34;

Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. of Easttown

Township, 331 F.3d 386, 399-400 (3d Cir. 2003); VoiceStream Minneapolis,

342 F.3d at 835 n.7; Second Generation Props. L.P. v. Town of Pelham, 313

F.3d 620, 631-32 (1st Cir. 2002); Sprint Spectrum L.P. v. Willoth, 176 F.3d

630, 643 (2d Cir. 1999).  While these courts have differed significantly in their

determinations of what constitutes a "significant gap" in service coverage,[7] they

---

[7] For example, the Third Circuit has held that the question of whether there is a significant gap in service must be addressed from the consumer's perspective.  Thus, under the Third Circuit's test,

> it is necessary for the provider to show more than that it was denied an opportunity to fill a gap in its service system.  In order to show a violation of subsection 332(c)(7)(B)(i)(II) . . ., an unsuccessful provider applicant must show . . . that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network.  In this context, the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users. The provider's showing on this issue will thus have to include evidence that the area the new facility will serve is not already served by another provider.

APT Pittsburgh Ltd. P'ship, 196 F.3d at 480.  In contrast, other circuits have held that whether there is a significant gap in service must be determined from the provider's perspective, and thus, "a significant gap in service (and thus an effective prohibition of service) exists whenever a provider is prevented from filling a significant gap in its own service coverage"  MetroPCS, 400 F.3d at 733; Second Generation Props., 313 F.3d at

agree on at least three basic concepts integral to the "significant gap" analysis. First, all courts agree that not every gap in service is "significant" within the meaning of the TCA. Thus, decisions by state and local governments which result in de minimis denials of service do not constitute effective prohibitions on the provision of wireless services for purposes of the TCA. See, e.g., MetroPCS, 400 F.3d at 734 (explaining that "the TCA does not guarantee wireless service providers coverage free of small 'dead spots,' " and that "the relevant service gap must be truly 'significant' " and "not merely individual 'dead spots' within a greater service area." (quotations omitted); 360 Degrees Commc'ns, 211 F.3d at 87 (stating that the TCA "obviously cannot require that wireless services provide 100% coverage," and explaining that the federal regulations expressly anticipate the existence of "dead spots" within a service area); Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 643-44 (2d Cir. 1999)

---

631-33 (same).

Because Powertel has failed to submit sufficient evidence for the Court to conclude that a significant gap exists in its own coverage, the Court has no occasion to consider whether the existence of a significant gap in coverage should be determined from the user's or the provider's perspective. Similarly, the Court need not consider whether Powertel must additionally establish, as the Second, Third, and Ninth Circuits require, that the proposed facility "is the least intrusive on the values that denial sought to serve." Willoth, 176 F.3d at 644; APT Pittsburgh, 196 F.3d at 481; MetroPCS, 400 F.3d at 735. But see 360 Degrees Commuc'ns, 211 F.3d at 87 ("A community could rationally reject the least intrusive proposal in favor of a more intrusive proposal that provides better service or that better promotes commercial goals of the community.")

("Where the holes in coverage are limited in number or size (such as the interiors of buildings in a sparsely populated area, or confined to a limited number of houses or spots as the area covered by buildings increases) the lack of coverage likely will be de minimis" and denying applications will not be a prohibition of service.); see also 47 C.F.R. § 22.99 (defining "dead spots" as "[s]mall areas within a service area where the field strength is lower than the minimum level for reliable service" and stating that "[s]ervice within dead spots is presumed").  Second, these courts agree that the "significant gap" inquiry is highly-fact intensive, see, e.g., Second Generation Props., 313 F.3d at 630 (explaining "that there can be no general rule classifying what is an effective prohibition," and that "[i]t is a case-by-case determination"); SNET Cellular, Inc. v. Angell, 99 F. Supp. 2d 190, 198 (D.R.I. 2000) ("[G]iven the fact-intensive nature of the inquiry, it is difficult to see how summary judgment could be an appropriate vehicle for resolving effective prohibition claims in favor of either side except in the rarest of circumstances.").  And third, it is the provider's burden to establish the existence of a significant gap in service.  See, e.g., VoiceStream Minneapolis, 342 F.3d at 835 n.7 ("In order to establish a violation of the TCA's anti-prohibition clause, the service provider must first show that its proposed facility will close a "significant gap" in coverage.");

APT Pittsburgh, 196 F.3d at 480 (explaining that "the provider must show that its [proposed] facility will fill an existing significant gap . . . in the service available to remote users"); Todd, 244 F.3d at 63 (explaining that the provider, and not the zoning board, bears the burden of establishing that application of zoning regulations has the effect of prohibiting provision of wireless services).

On the present record, the Court concludes that Powertel has failed to carry its burden of demonstrating a "significant gap" in its service coverage. The only evidence before the Court on this issue consists of Powertel's statements that it "investigated various sites for its telecommunications antennas to avoid coverage gaps and service quality problems in Clarkston," and that its engineers determined that locating an antenna on the Property would "provide coverage in an area where coverage currently does not exist or is extremely weak." (Complaint ¶ 11.)[8]  Taking these facts as true, as the Court is bound to do given the absence of any other record evidence to the contrary, there can be no question that there are "gaps" in Powertel's coverage in the City of Clarkston.  But, what Powertel has not established (and thus what precludes a grant of summary judgment in its favor), is that these gaps are "significant"

---

[8] The allegations in the Complaint were verified by affidavit, and the City does not challenge the consideration of this evidence on summary judgment.

17

within the meaning of the TCA.  Powertel has presented no evidence tending to show the size of the area in which Powertel claims service is limited, the nature and character of that area or the number of potential users in that area who may be affected by the alleged lack of service,[9] the relative wireless signal strength in that area, or whether that area is currently served by other providers.[10]  The Court is therefore unable to ascertain whether the purported gap in Powertel's service coverage is truly significant, or whether the gaps are "merely individual 'dead spots' within a greater service area."  (Cf. Br. in Supp. of Mot. for Summ. J. at 21 (stating that "[t]he proposed tower is designed to close coverage gaps and to remedy 'spotty' coverage in certain areas of the City.")  Because the existence of a significant gap is a highly fact intensive inquiry, and because Powertel bears the burden of establishing the existence of a significant gap in coverage, the Court must conclude, in the absence of such evidence, that

---

[9] The nature and character of the area, as well as the number of potential users in that area may be significant.  For example, it may "matter[] a great deal . . . whether the 'gap' in service merely covers a small residential cul-de-sac or whether it straddles a significant commuter highway or commuter railway."  Cellular Telephone Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus, 197 F.3d 64, 70 (3d Cir. 1999).  Were it the latter, a gap which is small in area may nevertheless affect a large number of users and cause significant disruption in their wireless services.  Id.

[10] Of course, the fact that other wireless carriers offer service in that area may or may not be relevant, depending upon whether the Court adopts the "user" or "provider" view of the TCA's anti-prohibition clause.

18

Powertel has failed to carry its burden of establishing that the City's denial of its Application had the effect of prohibiting the provision of wireless services in violation of § 332(c)(7)(B)(i)(II).[11]  As such, Powertel has failed to demonstrate, on the present record, that it is entitled to judgment as a matter of law on its anti-prohibition claim.  Accordingly, Powertel's Motion for Summary Judgment on this ground must be denied.

## A.    Written decision supported by substantial evidence

The TCA provides:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii).  Powertel asserts that the City's decision was not supported by substantial evidence, and thus ran afoul this provision.[12]

---

[11] Assuming that Powertel can establish a significant gap in its service coverage exists, there would of course remain the larger question of whether Powertel has met its "heavy burden" of establishing that the City's denial of its Application is tantamount to a prohibition of service.  See, e.g., Second Generation Props., 313 F.3d at 629-30 (holding that the provider carries the "heavy burden" to show "not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try," and explaining that to make this showing the provider must establish that its "existing application is the only feasible plan" and that "there are no other potential solutions to the purported problem.").

[12] As explained above, the TCA requires that the state or local government's decision be "in writing." 47 U.S.C. § 332(c)(7)(B)(iii).  The TCA does not specify what

In its response to Powertel's Motion for Summary Judgment, the City does not address Powertel's substantial evidence challenge to its decision.  (See Br. in Opp'n to Mot. for Summ. J. [24] at 10-11 n.1.)  Nevertheless, at the summary judgment stage, the Court must review the record before it and

_____

is required for a decision to be "in writing."  The Eleventh Circuit does not appear to have addressed the question, see Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1218 n.8 (11th Cir. 2002), and those courts which have considered this provision have substantially divided.  Compare New Par v. City of Saginaw, 301 F.3d 390, 395-96 (6th Cir. 2002) (holding that to satisfy the in writing requirement, the decision must "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons.") MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 723 (9th Cir. 2005) (same); Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 60 (1st Cir. 2001) (same); Omnipoint Communications, Inc. v. Planning & Zoning Comm'n, 83 F. Supp. 2d 306, 309 (D. Conn. 2000) (taking a more extreme view and holding that "[a] local zoning authority must issue a decision in writing setting forth the reasons for the decision and linking its conclusions to evidence in the record."), with AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach, 155 F.3d 423, 430 (4th Cir. 1998) (stating that "[t]he simple requirement of a 'decision . . . in writing' cannot reasonably be inflated into a requirement of a statement of findings and conclusions, and the reasons or basis therefor," and holding that stamping "DENIED" on an application satisfied the "in writing" requirement).

The written decision in this case consists of a letter sent to the Property owner, Ms. Johnson, which states in pertinent part:

> Following a Public Hearing on November 1, 2005, the Vice-Mayor and Council voted to accept the recommendation of Planning and Zoning and deny your request for a building permit for 905 N. Indian Creek Drive to construct a cell tower.

(Defs.' Resp. to Mot. for Summ. J. Ex. G [24].)  Because Powertel does dispute that the City's decision was "in writing" for purposes of § 332(c)(7)(B)(iii), the Court has no occasion to consider whether the above letter satisfies the requirements of the TCA.

determine whether Powertel has demonstrated its entitlement to judgment as a matter of law.  See U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1102-03 (explaining that district court must ensure that motion is supported by evidentiary materials and must at least review all evidentiary materials submitted in support of motion for summary judgment).  The Court has complied with  its obligation in this respect, and determines that Powertel has failed to make the required showing.

Powertel, as the party seeking to overturn the City's decision, bears the burden of proving that it is not supported by substantial evidence.  Michael Linet, 408 F.3d at 762; American Tower, 295 F.3d at 1207.  "[T]he 'substantial evidence' standard is the traditional substantial evidence standard used by courts to review agency decisions."  Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 762 (11th Cir. 2005).  Substantial evidence means " 'such relevant evidence which a reasonable mind might accept as adequate to support a conclusion.' "  American Tower LP v. City of Huntsville, 295 F.3d 1203, 1207 (11th Cir. 2002) (quoting AT & T Wireless PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423, 430 (4th Cir. 1998)).  " 'It requires more than a mere scintilla but less than a preponderance.' "  Id. (quoting 360 degree Communications, 211 F.3d at 83).  In conducting a substantial evidence

21

review, the Court is required to consider the record in its entirety, including

evidence unfavorable to the administrative decision.  See Preferred Sites, 296

F.3d at 1218.  A reviewing court cannot substitute its own judgment for that of

the local board, and must uphold the zoning decision if it is supported by

substantial evidence whether or not that court would reach the same conclusion

in the first instance.  Id.

Powertel offers two points of argument in support of its claim that the

City's decision is not supported by substantial evidence, neither of which is

persuasive.  First, Powertel argues that its Application "met all of the

requirements of the Zoning Ordinance," and yet that Application was denied.

In this respect, Powertel argues that "the only guidance provided in the Zoning

Ordinance for construction of telecommunication towers . . . is contained in

Section 612 of the Zoning Ordinance," and that "[t]he Zoning Ordinance

contains no other requirements to which an applicant (such as Powertel) must

adhere or against which to measure Defendants' decision to grant or deny the

requested building permit."  (Br. in Supp. of Mot. for Summ. J. at 21.)

Powertel's first line of argument is simply wrong.  Section 504 of the

Zoning Ordinance—the provision upon which the City relied in denying

Powertel's Application—provides that "[o]nly one principal building or

22

structure or use and its customary accessory buildings and uses shall be

permitted on any lot."  Powertel does not dispute that, at the time its

Application was submitted to the City for consideration, a building was already

located on the Property which was utilized as a beauty salon by the Property

owner.  Nor does Powertel dispute that the beauty salon operated out of the

existing building on the Property constitutes a "principal building or structure

or use" within the meaning of §504, or that its proposed telecommunications

tower would constitute a customary accessory building or use within the

meaning of that section.  Given the concededly ongoing commercial enterprise

on the Property which Powertel does not dispute constitutes a primary building

or structure or use within the meaning of § 504, and given that Powertel's tower

cannot be considered an accessory building or structure or use under that

section, the record clearly reflects that Powertel's Application did not comply

with the limitations imposed by § 504.[13]  It is therefore difficult to understand

how Powertel can now assert that its Application complied with all applicable

_____

[13] Powertel points out on more than one occasion that other similarly zoned lots within the City have multiple uses or structures on them.  While that may be the case, the Zoning Ordinance clearly provides a procedure for seeking a variance when certain specified conditions are satisfied.  Because no evidence has been presented regarding the nature of the multiple buildings or uses on those lots, or whether a variance was granted with respect to those lots, this fact, in and of itself, is of little relevance.

requirements of the Zoning Ordinance.  As such, this argument provides no

basis for the Court to conclude that the City's decision was not supported by

substantial evidence.

Second, Powertel argues that it submitted voluminous evidence in

support of its Application, and that the City, acting in contravention to that great

weight of evidence, elected to deny Powertel's Application nonetheless.  As an

initial matter, Powertel's demonstrated noncompliance with § 504 is a sufficient

reason in and of itself to deny the Application irrespective of the other evidence

presented in support of Powertel's request.  But even putting that aside,

Powertel's argument in this regard is simply not borne out by the record in this

case.  For example, Powertel states that it "presented evidence that the location

of the proposed structure was appropriate and would serve the residents and

businesses of the City of Clarkston and DeKalb County," "that there was no

existing tower or alternative structure . . . that would accommodate its antenna,"

and that it ultimately "secured a recommendation for approval of the proposed

tower from the City's Planning and Development Board."  (See Br. in Supp. of

Mot. for Summ. J. at 21-22.)  But, contrary to Powertel's representations, that

evidence does not appear anywhere in the administrative record.  Indeed, the

administrative record is clearly to the contrary.  That record indicates that the

City repeatedly requested information from Powertel regarding the feasibility of locating its communications tower on an alternative site, and that Powertel did not provide that information to the City.  (See Defs.' Resp. to Mot. for Summ. J. Ex. E at 1 (stating that the chairman of the City's Planning and Zoning Board, Mr. Wright, informed the City Council that Powertel "had met with Planning and Development, but had not provided additional requested information to the Planning and Zoning Commission that would detail that the tower could not be located in another location"); see also id. (specifying that Powertel was given the option of deferring consideration of its Application until such information could be provided, but that Powertel requested that the City act on its Application as it was then presented).  Additionally, the record reflects that the Chairman of the City's Planning and Zoning Board, Mr. Wright, recommended that Powertel's Application be denied based upon its noncompliance with § 504.  (See id. ("Mr. Wright pointed out that Powertel has requested to defer their [Application] from the past two council meetings and has chosen not to provide information on alternative sites for the tower and Mr. Wright upheld his recommendation for denial.").)  Thus, there is simply no indication in the record that the evidence which Powertel describes was actually presented to the City at the time it made its decision to deny Powertel's Application.

25

In sum, it is Powertel's burden to establish that the City's decision was not supported by substantial evidence.  It has failed to satisfy that burden. Despite Powertel's assertion that "there is <u>no</u> evidence, much less substantial evidence, upon which Defendants could have based their denial of Powertel's proposed tower," its Application clearly did not comply with the requirements of § 504, and the record does not reflect the presentation of the evidence upon which Powertel now relies.  On this record, Powertel's Motion for Summary Judgment must be denied.

## Conclusion

For the reasons stated herein, Powertel's Motion for Partial Summary Judgment [22] is **DENIED**.  The parties are **DIRECTED** to file their proposed consolidated pretrial order not later than twenty (20) days from the entry of this Order.

**SO ORDERED** this  _3rd_  day of August, 2007.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)